UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANO WILLIAMS,

                    Plaintiff,

                                                      Case No. 16-CV-10940

vs.

                                                      HON. GEORGE CARAM STEEH

LIBERTY PARK OF AMERICA,
THE DUGOUT and MARY ZOLNO,

                    Defendants.

_____/


OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DOC. 18]

       Plaintiff Deano Williams filed this civil rights case against his

employer under Title VII of the Civil Rights Act of 1964 and the Michigan

Elliot-Larsen Civil Rights Act.  His complaint alleges racial discrimination,

harassment and retaliation by defendants Liberty Park of America, the

Dugout and Mary Zolno.  The matter is before the court on defendants'

motion for summary judgment.  For the reasons stated below, defendants'

motion for summary judgment is GRANTED.


- 1 -

FACTUAL BACKGROUND

Deano Williams is an African American man who was hired to work as a security guard for Liberty Park of America, an outdoor baseball and softball facility.  Williams was hired as a short-term seasonal employee to work outside security at the venue.  Work schedules were posted one week in advance.  When he applied for the position, Williams committed to being available to work full-time.

When he was hired, Williams was provided with Liberty's Hourly Employee Information Guide (the "Handbook").  The Handbook informs employees that excessive absenteeism is grounds for immediate termination.  (Handbook at 5-6).  The Handbook allows 3 absences a year, even with a phone call, before termination can occur.  The Handbook also provides the employer's policy regarding discrimination and sets forth the procedure employees should follow if they feel they have been discriminated against.  (Handbook at 2-4).

> … Consequently, if you feel discriminated against or harassed (sexually or otherwise) by someone who is not a Liberty Park employee, but with whom you must interact as part of your duties and responsibilities, you should immediately report your concerns in accordance with the complaint procedure described below. . . . .
>
> If you believe you may have been discriminated against or harassed in violation of Liberty Park's Policy on Equal Employment Opportunity, you should report your concerns

> <u>immediately</u> to your supervisor, any other manager or supervisor, or a Vice President. . . .
>
> If you are not entirely satisfied with how your complaint and/or concerns have been handled, please notify, <u>in writing</u>, as soon as possible, Liberty Park's attorneys … so that the matter can be investigated….

(Handbook at 3-4).  The Handbook identifies Mary Zolno as Vice President and the only staff member that can authorize any change or deviation from the listed policies.  (Handbook at 7).

During his employment, which began April 11, 2014 and ended on October 9, 2014, Williams called in absent eight times.  In the last month before his termination alone he called in four times.  Williams was purportedly terminated for excessive absenteeism.  The decision to terminate Williams was made by Dave Furman, who was the Chief of Security and is Caucasian.  (Dave Furman Aff).

After his termination, Williams met with Mary Zolno.  He explained that he had endured racial discrimination and harassment by patrons and she offered him his job back.  According to Williams, he told Zolno he would consider returning to his job and was given a start date, but ultimately he did not accept the position because he did not want to return to an environment that caused him so much stress.  According to Zolno, she told Williams that any further call offs on his part would require

documentation or lead to termination, and Williams agreed that was fair and was placed on the schedule.  After he did not report for work, nor call off, on his first two scheduled days, he was considered to have voluntarily quit.

Williams contends that throughout his employment at Liberty Park he was subjected to racial slurs and threats by patrons.  In his job as a security guard, Williams occasionally had to eject drunk, unruly patrons from the ballpark.  On June 17, 2014, Williams was escorting a patron to the parking lot when the patron made a racial epithet toward him and told him, "I have some hollow points for your ass," which he considered to be a threat on his life.  Williams told his manager, Dave Smigiel, about the incident and contends that he asked Smigiel to call the police.  Williams provided a written report of the incident to Smigiel.  (*Id*. at 46).  According to Williams, Smigiel did not call the police and told Williams to report back to his post.  (Williams dep. 46-47).  Smigiel did call the player and his team manager, and suspended the player from the park for the rest of the season.

Williams made a police report about the June threat on his life on October 19, 2014, four months after the incident, and after he stopped working at Liberty Park.  He alleges that the reason he delayed making the

police report was because he was not able to obtain the name of the perpetrator who threatened to kill him until that time.

Plaintiff refers to one other incident, which occurred in July of 2014 while plaintiff was escorting an intoxicated white player out of the park because he was involved in a fight.  The player made racist comments to plaintiff, which were allegedly heard by his manager, Dave Furman. According to plaintiff, Furman told him not to worry, it happens all the time, and he will take care of it.  (Williams dep. p. 60).

Williams filed a complaint with the EEOC and Michigan Civil Rights Department on February 27, 2015.  He was issued a Right to Sue Letter on December 29, 2015.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored

procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to

judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

## ANALYSIS

### I. Racial Discrimination

To establish a *prima facie* case of employment discrimination based on race a plaintiff must present circumstantial evidence demonstrating: (1) that the plaintiff is a member of a protected class; (2) that the plaintiff was qualified for the position; (3) that the defendant subjected the plaintiff to an adverse employment action; and (4) that the defendant did not subject similarly situated persons outside the protected class to such adverse action. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Plaintiff was a member of a protected class and he was qualified for his position.  The question is whether plaintiff was subjected to an adverse employment action and whether similarly situated persons outside the protected class were treated differently.

An obvious adverse employment action is that plaintiff was terminated after he was absent from work on eight occasions.  Despite the fact that during the 2014 season, Liberty Park employed six African Americans and seven Caucasians in security positions, plaintiff does not point to any Caucasian employees who had a similar number of absences but were not terminated.  Instead, plaintiff argues that Casey, a Caucasian employee, was not subjected to racial epithets by patrons.  Plaintiff also asserts that Casey was promoted from security guard to bartender, while plaintiff was not.

The court observes that the nature of the security guard position brings on hostility by patrons who are being ejected from the park.  None of plaintiff's co-employees were deposed in this case, so we do not know if Casey or any of the other security guards were also subjected to derogatory remarks by patrons.

Plaintiff has asserted several theories to support his claim of racial discrimination, none of which survive defendants' motion for summary

- 8 -

judgment. If the alleged adverse employment action was plaintiff's termination, plaintiff has failed to come forth with any admissible evidence that similarly situated Caucasian security guards with an excess of absences were treated differently. If the alleged adverse employment action was being subjected to a hostile work environment, plaintiff has failed to produce any evidence that Caucasian security guards were not likewise subjected to racial epithets. (See next section on Racial Harassment) If the alleged adverse employment action was a failure to promote plaintiff to bartender because of his race, there has been no evidence produced regarding the qualifications of plaintiff or Casey for the position of bartender.

Simply stated, plaintiff bears the burden of establishing the elements of his prima facie case, and in this case plaintiff has failed to support his claim of racial discrimination with admissible evidence. Summary judgment is granted to defendants on plaintiff's claim of racial discrimination.

## II. Racial Harassment

To establish a prima facie case of racial discrimination based on a hostile work environment, a plaintiff must show that: (1) the plaintiff was a member of a protected class; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on race, (4) the harassment

was sufficiently severe or pervasive to alter the conditions of employment and create an environment that was intimidating, hostile, or offensive; and (5) the employer knew or should have known about the harassing conduct but failed to take corrective action. *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011). All of the circumstances must be looked at in order to determine whether an environment is hostile or abusive for purposes of the fourth element. *Id.* In contrast, the third element limits the scope of the analysis to harassment based only on the plaintiff's race. *Id.*

An employer may be held liable for harassment by nonemployees if the employer tolerates a discriminatory environment and fails to take steps to remedy known discrimination. *See e.g., Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669 (6th Cir. 2000) (prison could be held liable for hostile work environment created by prison inmates). In *Slayton*, the instigator of harassment was a co-worker of the plaintiff. In this case, the only race-based harassment described by plaintiff consists of comments made to him by two ejected players. The court must look at defendants' conduct in responding to the incidents to determine if they permitted or tolerated a discriminatory environment that rose to the level of harassment.

There is no allegation that the defendants in this case created a hostile work environment. In fact, in his deposition, plaintiff testified that

none of his managers made any racially discriminatory comments to him or about him while he was employed with defendants.  (Williams dep. at 63-64).  Rather, plaintiff complains that defendants tolerated a racially hostile work environment by not sending an email to the teams and players regarding racial sensitivity.  Plaintiff also makes the allegation that his "employer was known throughout the community as a hotbed for racism." (Response at # 10).  This allegation is not supported by any evidence.

Plaintiff was employed for six months as an outside security guard. He describes two incidents of being subjected to racial slurs by patrons. The first incident described by plaintiff was the June incident, which involved the threat on plaintiff's life.  Following the incident, plaintiff's manager ejected the offending player for the rest of the season.  Plaintiff never found out what happened after he ejected the player during the second incident, in July of 2014.

Again, the incidents described by plaintiff make it clear that it is not unusual for people to be angry when they are ejected from the park, and for them to take their anger out on the security guard who ejects them. However, there is insufficient evidence to conclude that the harassment complained of created an intimidating, hostile, or offensive work

environment of which defendant was or should have been aware and failed to take corrective action.

Defendants have a policy to address what an employee should do if he feels he has been discriminated against or harassed, including directing the employee to contact defendants' lawyers.  Plaintiff did not complain to anyone that he was dissatisfied with the investigations into the ejected players.  He complains that nobody reported the results of the investigations to him, and for that reason assumes that the matters were not handled properly.

In fact, defendants did address the issue of the player who threatened plaintiff by telling both the player and his team manager that he was no longer allowed in the park.  Plaintiff has not submitted any other evidence of a racially discriminatory culture within defendants' company.

Plaintiff argues that a company may be held liable for hostile work environment harassment even where no employee has complained if the employer had constructive knowledge of the harassment.  *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999).  In *Jackson*, the court found that a hostile work environment was created by a supervisor with immediate authority over the employee.  There is no similar evidence in this

- 12 -

case of a supervisor who was perpetuating, or even tolerating, a racially hostile work environment.

In fact, the opposite can be said to be true. Whenever a patron was unruly, he would be ejected from the park. On occasion it was plaintiff's job to carry out the ejection, which put him in the position to be the target of their anger and frustration. All of the evidence points to the fact that the managers conducted some level of investigation into the incidents that resulted in the ejections. In the case of the June incident, defendants banned the patron from the park for the rest of the season. While it is unclear what happened after the July incident, plaintiff did not lodge any official complaints about the racial harassment he was subjected to after either of the two incidents.

As far as the defendants were concerned, they handled the incidents and were not made aware that there were any other issues that needed to be addressed. Plaintiff did not invoke the complaint procedure set up by defendants to be utilized when an employee feels he has been a subject of discrimination or harassment. The court finds that plaintiff has failed to set forth a prima facie case of racial harassment. Summary judgment is granted to defendants on plaintiff's claim of racial harassment.

III. Retaliation

Plaintiff argues that he has presented direct evidence of discrimination, so the *McDonnell Douglas* burden shifting paradigm does not apply to his retaliation claim. However, there is no direct evidence of discrimination by or at the direction of defendants.

To make out a prima facie case of retaliatory discharge, the plaintiff must prove that (1) he engaged in protected activity, (2) the employer knew about the activity, (3) the employer took action that was adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action.

Mr. Williams alleges that he engaged in the protected activity of complaining about the harassing behavior of the park's patrons. He argues that defendants did not address his complaints, which makes them liable for the hostile work environment that existed. It is not clear what complaints Mr. Williams is talking about in this regard. He filed reports following the two incidents, but these were reports about the incidents involving the ejected patrons and not complaints about racial harassment on the part of defendants. Neither party produced any complaints made by Mr. Williams about racial harassment by his employer.

- 14 -

Plaintiff did not file his police report until after he was terminated and/or quit his employment. Therefore, the police report cannot form the basis of a retaliation claim.

With no evidence to support a prima facie case of retaliatory discharge, summary judgment is granted for defendants.

<u>CONCLUSION</u>

For the reasons stated above, defendants' motion for summary judgment is GRANTED.

Dated:  July 18, 2017

<u>s/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on July 18, 2017, by electronic and/or ordinary mail.

<u>s/Marcia Beauchemin</u>
Deputy Clerk

---